UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

PAUL LYN and JAMROC CAFÉ, INC.,
                              Plaintiffs,

                                                    **MEMORANDUM and ORDER**
     -against-                                      On Defendants' Motion for
                                                    Summary Judgment
                                                    03-CV-5041 (DRH)

INCORPORATED VILLAGE OF HEMPSTEAD,
JAMES A. GARNER, JODY EDMONDSON,
WAYNE J. HALL, SR., PERRY PETTUS,
DON RYAN, CAROL RIDDICK, JAMES RUSSO,
SGT. KEARNEY, JANE AND JOHN DOES,
                              Defendants.
_____

**APPEARANCES:**

**DIANE S. POLLARD, ESQ.**
**Attorney for Plaintiffs**
67 Wall Street, Suite 2211
New York, NY 10005


**LAUREL R. KRETSING, ESQ.,**
**JASPAN SCHLESINGER HOFFMAN, LLP**
**Attorney for Defendants**
300 Garden City Plaza
Garden City, NY 11530

**HURLEY, Senior District Judge:**

     Before the Court for its consideration is Defendants' Motion for Summary Judgment,

together with supporting papers, and Plaintiffs' Opposition thereto, together with supporting

papers. Plaintiffs bring a suit against the Defendants claiming constitutional violations, in

particular, violations of the Privileges and Immunities Clause, the Supremacy Clause, the

Commerce Clause, the Contracts Clause, and violations of the First, Fourth, Fifth, Eighth, Ninth,

Tenth, and Fourteenth Amendments. As a result, Plaintiffs seek declaratory and injunctive

relief; Plaintiffs also ask for damages pursuant to 42 U.S.C. § 1983. Plaintiffs' claims arise from the revocation of their business license to run a night club, the Jamroc Café, Inc. ("Jamroc"), within the borders of the Village of Hempstead ("Village"). The Plaintiffs' claims of constitutional violations focus on the Village's Code of Ordinances, specifically Chapter 86, sections (1) through (13) (hereinafter, the "Code"or "Village Code"). Defendants contend that the Plaintiffs cannot prove that the Code is unconstitutional or that the Village violated Plaintiffs' rights when it revoked Plaintiffs' license to operate the Jamroc within the Village.

For the reasons stated *infra*, the Court grants Defendants' Motion for Summary Judgment.

## I. BACKGROUND

### A. Material Facts

Having reviewed the Defendants' Statement of Material Facts Pursuant to Local Rule 56.1, together with corresponding affidavits, declarations, and exhibits, and Plaintiffs' Response to Defendants' Statement of Material Facts, together with Lyn's affidavit and attached exhibits, the Court gleans the following material facts.[1]

---

[1] The Court notes that Plaintiffs' "Response to Defendants [sic] Statement of Material Facts" (hereafter, "Rule 56.1 Response") attempts to create disputes of material fact where, from the record, none appear to exist. As the opponents to Defendants' Motion for Summary Judgment, Plaintiffs are required to "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule [i.e., Federal Rule of Civil Procedure 56], the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Reznick v. Aramark Corp.*, No. 97-cv-18977, 1999 WL 287724, at *6 (E.D.N.Y. 1999) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e))). And, it is well-settled law that "a non-moving party cannot survive a properly supported motion for summary judgment by resting on its pleadings 'without offering 'any significant probative evidence tending to support the complaint.''" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). Yet, that is precisely what Plaintiffs have

-2-

Jamroc was a night club located at 45 Main Street in Hempstead, New York, adjacent to a Village municipal park lot. Plaintiff Paul Lyn ("Lyn") was the owner and operator of Jamroc. The Jamroc was a multi-level facility with, inter alia, three bars, two dance floors and an outdoor café. Different events were held targeting different age groups. Some events were held for non-drinking-aged teens, while others were held for drinking-aged young adults. One such event was held on Thursday, August 21, 2003; it lasted into the early morning hours of Friday, August 22, 2003, at which time Village police were called to the establishment because of a disturbance in

---

attempted to do here; their Rule 56.1 Response is replete with citations to their Complaint and Answer to Defendants' Counterclaim as support for alleged disputes. Noticeably missing from Plaintiffs' Rule 56.1 Response are citations to significant probative evidence. As Second Circuit precedent has consistently made clear, "[c]onclusory allegations, conjecture, and speculation 'are insufficient to create a genuine issue of fact.'" *Id.* (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (further citation omitted); *see also Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532 (2d Cir. 1993) (stating that a non-moving party may not simply rely upon "conclusory statements").

Lyn has also filed an "Answering Affidavit to Defendant's [sic] Motion for Summary Judgment" (hereinafter, "Answering Affidavit"). While the Affidavit is made upon Lyn's personal knowledge and is sworn to and notarized, much of the facts attested to and the exhibits attached thereto are irrelevant to the issues at hand. The balance of the attached exhibits do not evidence "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Similarly, Plaintiffs' references to Defendants' submitted exhibits do not demonstrate the existence of material facts in dispute.

The Court is also unpersuaded by Plaintiffs' objections to the affidavits submitted by the Defendants. (*See* Answering Affidavit, ¶¶ 17-20.) Contrary to Plaintiffs' assertions, the Declaration of Laurel R. Kretzing, and the Affidavits of Wayne J. Hall, Sr., James Russo, and Michael Kearney, all substantially comply with 28 U.S.C. § 1746. *See, e.g., Mugno v. Societe Internationale de Telecommunications*, No. 05-cv-2037, 2007 WL 316573, *8-*9 (E.D.N.Y. Jan. 30, 2007) (discussing requirements of declarations). As such, the Declaration and Affidavits shall be considered by the Court in its ruling on Defendants' Motion for Summary Judgment.

In sum, the Court is now presented with Defendants' Motion that is "made and supported as provided" in Rule 56 and Plaintiffs' Opposition that rests upon the mere allegations of their pleadings and a Rule 56.1 Response and an Answering Affidavit that do not properly "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). It is in this context that the Court must determine whether it is appropriate to enter summary judgment against Plaintiffs.

the adjacent Village municipal parking lot.  The crowd was large[2] and unruly; the Village police required the assistance of other area police forces to control the crowd.  Subsequently, an arrest was made for possession of a firearm; there were also reports of persons being cut or stabbed.

Shortly before the end of business hours on August 22, 2003 (i.e., 5:00 p.m.), Sergeant Kearney ("Kearney") of the Village's Police Department became aware that another music event was scheduled to be held at the Jamroc within the next few days.  Given (1) the early Friday morning incident outside the Jamroc, and (2) prior police intervention required at and around the night club during previous musical events, Kearney became concerned for the public's health and safety if the next event were to be held.

Under the Code, the Village Clerk is designated as the "License Commissioner" and, as such, is authorized, inter alia, "to conduct investigations in relation to the issuance, renewal, amendment, termination, cancellation, revocation and suspension of licenses or permits required by provisions of [the] Code."  Code § 86-2.  To the extent investigations were required, that function was apparently delegated by the Village Clerk to Kearney.  However, the power to suspend a license remained vested in the Village Clerk, subject to the holding of a prompt hearing before the Village Board "concerning the facts and circumstances prompting the suspension," which Board shall then decide whether to "continue suspension for a fixed period of time or reinstate or revoke the license."  *Id.* § 86-12.

Because of prior incidents involving the Jamroc and knowing that another event was to

---

[2]  Although the number of people in attendance that Friday morning may not be determined from the record, Lyn estimated the average Saturday night crowd in 2003 to be "about eight hundred people."  (Lyn Dep. at 107, Ex. K, attached to Defs.' Exs. in Supp. Mot. Summ. J.)

-4-

be held before the next work week, Kearney had a discussion with one of the deputy clerks (as the Village Clerk was on extended medical leave) about suspending Jamroc's license. (*See* Defs.' Rule 56.1 Statement, ¶ 65). Later on that Friday, viz. August 22, 2003, Kearney caused a "Notice of Suspension" to be hand-delivered to Lyn. The Notice, on Police Department letterhead, was signed by Kearney and read:

> Be advised your license to conduct business at Jam Roc[3] 45 Main St. is suspended immediately. The reason for suspension is Sec: 86-11E of the Village code. The section reads conducting any business activity which is regulated by the provisions of this code or any other law requiring the license in such a manner as to constitute a breach of the peace or to endanger the health, safety or general welfare of the public is grounds for suspension. You have the right to request a hearing before the Village board for reinstatement of your license, which must be done to the Village clerks [*sic*] office in writing within ten days of the suspension. While your license is suspended, pending a hearing you can not be open for business.

(Ex. E, attached to Defs.' Exs. in Supp. Mot. Summ. J.) While this Notice cited the relevant Code section upon which suspension was based, it did not identify the conduct at issue that constituted the alleged breach or endangerment. Yet, Lyn complied with the order and the planned music event did not occur. He also sent a letter, dated August 25, 2003, requesting "a hearing before the Village Board as soon as possible," a lifting of the stay in the interim, and informing the Village of his "intention . . . to sell the building and close Jamroc Night club, which will effectively [produce] the same results as persued [sic] by the Village of

---

[3] As previously defined, the Court shall refer to Defendant Jamroc Café, Inc. as "Jamroc". However, "Jamroc" is spelled in various forms throughout the record; thus, when quoting materials from the record, the Court shall use the spelling presented in the record. It should be understood, however, that the different spelling of "Jamroc" does not indicate a different entity or defendant. Rather, all variations of "Jamroc" indicate the same corporate defendant.

Hempstead/Police Department." (*Id*. at Ex. F.)

Also on August 25, 2003, a formal "Notice of Suspension," pursuant to § 86-11(E) of the Code and stamped with the signature of the Village Clerk, was sent to Lyn. Unlike Kearney's Notice, this formal Notice identified the conduct alleged to breach the peace and to endanger the health, safety and general welfare of the public: "There have been numerous instances of which the most recent includes alcoholic consumption by underage individuals which was a possible factor in four people being stabbed on August 21, 2003 'Teen Night' in about [*sic*] your premises." (Ex. G, attached to Defs. Exs. in Supp. Mot. Summ. J.) The August 25th Notice again ordered that all business at the Jamroc "cease and desist pending a hearing" before the Village Board of Trustees. ( *Id.*) A license revocation hearing was conducted on October 7, 2003, before Mayor Garner, Trustee Hall, and Trustee Ryan of the Village Board. Plaintiffs were represented by counsel at the hearing. Testimony and evidence, including numerous police reports and police referral forms, were introduced. Garner, Hall and Ryan voted unanimously to revoke Plaintiffs' business license.

Plaintiffs never applied to run another business at 45 Main Street. In December 2004, Lyn sold 45 Main Street for $2 million.

B.    Procedural History and Summary of the Parties' Arguments

As stated in the Court's June 25, 2004, Memorandum of Decision and Order in this case:

> On August 29, 2003, Plaintiffs moved to enjoin the suspension of Jamroc's license in New York Supreme Court, Nassau County (Phelan, J.). Plaintiffs simultaneously filed a complaint alleging that the Village Code Section 86-11(E) was unconstitutional because it was an unreasonable exercise of police power.
>
> On September 17, 2003, Justice Phelan denied Plaintiffs' motion for injunctive relief, finding that they failed to adequately

establish a likelihood of success on the merits. Justice Phelan also dismissed Plaintiffs' complaint because Plaintiffs failed to serve a notice of claim.

Plaintiffs then filed a complaint in this Court, on October 3, 2003, seeking identical relief – an injunction, which the Court denied, and a declaration that the Village Code is unconstitutional. Defendants move[d] to dismiss Plaintiffs' complaint in its entirety, based on the doctrine of issue preclusion, or collateral estoppel. Additionally, the individual defendants James A. Garner, Jody Edmondson, Wayne J. Hall Sr., Perry Pettus, Don Ryan, Carol Riddick, James Russo, Sergeant Kearney, John Doe and Jane Doe argue[d] that they [were] entitled to qualified immunity.

(*Lyn et al. v. Inc. Vill. Hempstead et al.*, No. 03-cv-5041 (DRH) (WDW), slip op. at 2 (E.D.N.Y. June 25, 2004) (internal citations omitted).) Within the framework of a motion to dismiss, though, the Court did not have enough information to determine whether the individual Defendants were entitled to qualified immunity. (*See id.* at 3-4.) As to issue preclusion, the Court found that the issue in question–whether the relevant portions of the Village Code were ovevbroad and/or vague–had not been decided by the state court; there, Plaintiffs argued unconstitutionality of the Village Code because of unnecessary and unreasonable exercise of police power. In any event, the Court found "Plaintiffs have met their burden of establishing they have not previously fully and fairly litigated the claims advanced in their [federal] compliant . . . [as] Plaintiffs' state complaint was dismissed at the outset on procedural grounds." (*Id.* at 6.)

Defendants now move for summary judgment dismissing Plaintiffs' action in its entirety arguing that the Village Code does not violate Plaintiffs' constitutional rights.

## II. DISCUSSION

A.      Summary Judgment Standard

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has offered some evidence that no genuine issue of material fact remains to be tried, the burden shifts to the non-moving party to provide similar evidence indicating that a genuine, triable issue remains. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(e). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55.

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a

non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). The Second Circuit has stated: "Claims turning entirely on the constitutional validity or invalidity of a statute are particularly conducive to disposition by summary judgment as they involve purely legal questions." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 93 (2d Cir. 2003).

B.    The Instant Case

The Court will first address the constitutional violations alleged by Plaintiffs, utilizing the sequential format from Defendants' Memorandum of Law in Support of the Motion for Summary Judgment. (*See* Defs.' Summ. J. Mem. at i ("Table of Contents"), and 2-13.))[4] The Court will then address Defendants' arguments that Plaintiffs' action for damages under 42 U.S.C. § 1983 must be dismissed. (*See id.* at 13-19.) Finally, the Court will turn to Defendants' final points that neither the Village nor any of the individual Defendants are liable under § 1983 because Plaintiffs cannot prove, as a matter of law, a constitutional violation. (*See id.* at 19-20.)

1.    *Constitutional Violations*

(a)    The Privileges and Immunities Clause

_____

[4] The Defendants address Plaintiffs' allegations regarding: (1) violation of the Privileges and Immunities Clauses; (2) violation of the Supremacy Clause; (3) violation of the Commerce Clause; (4) violation of the Contracts Clause; (5) violation of the State's Police Power; (6) Vagueness violations; (7) violations of rights of Free Speech and of Assembly; and (8) Equal Protection violations. (*See* Pls.' Compl., ¶ 19 (A)-(G).) There is no particularized discussion of Plaintiffs' claims of constitutional violations under the Fourth, Eighth, Ninth or Tenth Amendments in any of the parties' submissions. (*See id.,* ¶ 22.); *see also* discussion *infra* under the caption "Allegations in Complaint that Defendants' Actions Violated . . . the Fourth, Eighth, Ninth and Tenth Amendments."

At its core, the Privileges and Immunities Clause requires a diversity of citizenship as it provides "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. Art. IV, § 2(1). "[I]ntended to foster a national economic union, the Privileges and Immunities Clause of Article IV limits a State's power to discriminate *against residents of other States* with respect to the Privileges and Immunities that 'are sufficiently basic to the livelihood of the Nation' and that 'bear[] upon the vitality of the Nation as a single entity.'" *Blumenthal*, 346 F.3d at 94 (quoting *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388 (1978) (emphasis added) (further citation omitted)). Thus, the threshold inquiry in a Privileges and Immunities Clause challenge is "whether a State has, in fact, discriminated against out-of-staters with regard to the privileges and immunities it accords its own citizens." *Id.* (citing *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 218, 222 (1984)). Then, a court considers whether there is sufficient justification for such discrimination. *See id.*

The Court is perplexed by Plaintiffs' claim of a Privileges and Immunities Clause violation in this instance as neither is an "out-of-stater." There is no dispute that Lyn is a resident of New York and Jamroc is a New York State corporation. Moreover, by its plain language, the Village Code applies to residents and non-residents alike. As Plaintiffs are not "out-of-staters" and, thus, cannot demonstrate discrimination on that basis, they have no claim under the U.S. Constitution's Privileges and Immunities Clause that the Code is unconstitutional. As a matter of law, therefore, it is proper to grant summary judgment in Defendants' favor as to Plaintiffs' Privileges and Immunities Clause claim.

(b)      The Supremacy Clause

The Supremacy Clause concerns itself with the primacy of federal law as it states that the "Constitution and the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. Art. VI, cl. 2. "Accordingly, consistent with the Tenth Amendment, Congress may create federal causes of action that state courts are obligated to adjudicate . . . [o]r it may enact a federal law that preempts a state-law cause of action, thereby foreclosing state courts from entertaining such a state-law claim." *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 204 (2d Cir. 2002) (internal citations omitted). In other words, the Supremacy Clause makes clear that between a federal law and a state law, federal law prevails over conflicting state law. It does not speak of–nor does it concern itself with–the supremacy of allegedly conflicting intra-state laws. *See, e.g., N. Y. State Pesticide Coalition, Inc. v. Jorling*, 874 F.2d 115, 118 (2d Cir. 1989).

While Plaintiffs discuss the early interpretation of the Supremacy Clause by the Supreme Court and the well-accepted "principle that the federal judiciary is supreme in the exposition of the law of the Constitution" (Pls.' Opp'n Mem. at 4-5), it is unclear what purpose this discussion serves. To begin, Plaintiffs' discussion does not elucidate their claim of a violation of the Supremacy Clause. All the Court knows, from reading the Complaint, is that Plaintiffs assert that the Village Code violates the Supremacy Clause "in that the law deprives both the plaintiff [*sic*] and members of the public of rights they are exercising under the laws of the United States and particularly rights created under the New York State Alcoholic Beverage Control Law and determined by the New York State Liquor Authority, pursuant thereto." (Pls.'s Compl., ¶ 19(B).) That conclusory assertion is, essentially, the extent of Plaintiffs' argument. The particular federal rights said to be impermissibly compromised by the Village Code are not identified and none are apparent to the Court.

Further absent from Plaintiffs' Supremacy Clause discussion is any opposition to Defendants' argument that "[s]ince the New York State Alcoholic Beverage Control Law is a law of the state – not the United States – the Supremacy Clause does not serve to render the Village Code section unconstitutional." (Defs.' Summ. J. Mem. at 4.) This statement is correct. As the Court has already stated, the focus of the Supremacy Clause is establishing the supremacy of federal law over conflicting state law, not resolving purported conflicts between intra-state laws.

In short, Plaintiffs' discussion of Supremacy Clause jurisprudence is not an offer of evidence of a genuine, triable issue. Having previously noted that their Rule 56.1 Response rests on their pleadings without offering any probative evidence tending to support their complaint of a Supremacy Clause violation (*see supra* note 1), there is no dispute to resolve. Rather, Defendants are entitled to judgment as a matter of law as to Plaintiffs' claim of a Supremacy Clause violation.

(c)     The Commerce Clause

The Commerce Clause empowers the U.S. Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes." U.S. Const. Art. I, § 8, cl. 3. That subsection dealing with Congress' power to regulate commerce among the several States has come to be known as the "Interstate Commerce Clause" and its purpose is to avoid "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994). And, "[w]hile the Commerce Clause is more frequently invoked as authority for federal legislation, the so-called dormant Commerce Clause limits state legislation that adversely affects interstate

commerce." *Grand River Enters. Six Nations v. Pryor*, 425 F.3d 158, 168 (2d Cir. 2005) (further

citation omitted). "The central rationale for the [dormant Commerce Clause's] rule against

discrimination is to prohibit state or municipal laws whose object is local economic

protectionism, laws that would excite those jealousies and retaliatory measures the Constitution

was designed to prevent." *C&A Carbone v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390

(1994).

Defendants argue that the Village Code "is facially neutral and does not discriminate

against interstate and out of state interests." (Defs.' Summ. J. Mem. at 4.) Indeed, by its plain

language, the Village Code requires "*any* person" engaging in or carrying on any business, trade

or calling in the Village to first obtain a license. Village Code § 86-1 (emphasis added). Yet, if

Plaintiffs can demonstrate either that a relevant provision of the Code (1) "imposes a burden on

interstate commerce incommensurate with the local benefits secured," *Grand River*, 425 F.3d at

168 (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004)),[5] or (2) "has

---

[5] The Second Circuit was referring to the application of the balancing test articulated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970):

In *Pike v. Bruce Church, Inc.*, the Supreme Court established the balancing test applicable to nondiscriminatory state legislation affecting interstate commerce:

Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

397 U.S. at 142 (internal citation omitted). To apply this balancing test, we

the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question," *id.*, then, Plaintiffs can establish a Commerce Clause violation. Here, although alleging in their Compliant that "[s]aid ordinances are an unreasonable burden upon interstate commerce" (Pls.' Compl., ¶ 19(C)), Plaintiffs have not presented evidence pertaining to either of the two predicates necessary to establish a violation of the Commerce Clause. Thus, presented with no genuine issue of material fact as to the purported Commerce Clause violation, as a matter of law, Defendants are entitled to summary judgment on that claim.

(d)     The Contracts Clause

Under Article I, Section 10, Clause 1 of the U.S. Constitution, "[N]o State shall . . . pass any . . . Law impairing the Obligations of contracts." When one asserts a violation of the Contracts Clause, therefore, one is required to show three elements: (1) there is a contractual relationship; (2) there has been a change in law that impairs that relationship; and (3) the impairment is substantial and unjustified. *See General Motors Corp. v. Romein*, 503 U.S. 181, 185-86 (1992); *Coney Islands Resorts, Inc. v. Giuliani*, 103 F. Supp. 2d 645, 655 (E.D.N.Y. 2000) (Glasser, J.).

While Plaintiffs allege a Contracts Clause violation in their Complaint (*see* Pls.' Compl., ¶ 19(D)), they do not respond to Defendants' argument that Plaintiffs make no claim for relief

_____

consider (1) the nature of the local benefits advanced by the statute; (2) the burden placed on interstate commerce by the statute; and (3) whether the burden is "clearly excessive" when weighed against these local benefits. *Id.*

*Grand River*, 425 F.3d at 169.

based on the Contracts Clause. (*See* Defs.' Summ. J. Mem. at 5.) The heart of Defendants' argument is that Plaintiffs freely began their business venture in the Village "with the Village's regulatory scheme already in place." (*Id.* at 6.) The record evinces no dispute that the Village Code–in particular, Chapter 86 of the Code–was enacted in early 1981 (*see* Defs.' Rule 56 Statement), and pre-existed the opening of the Jamroc in 1995 (*see* Pls.' Rule 56.1 Response). Thus, no meaningful claim may be advanced that the enactment of the challenged Code provision unconstitutionally impaired any contractual relationship between Plaintiffs and others. Defendants are correct in their assertion that "when [P]laintiffs chose to operate a business in the Village[,] they did so subject to the Code and all its provisions, including revocation." (Defs.' Summ. J. Mem. at 6.) *See, e.g., U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 33 n.17 (1977) ("This Court has said that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle presumes that contracting parties adopt the terms of their bargain in reliance on the law in effect at the time the agreement is reached.") (citations and internal quotations omitted). In short, as to Plaintiffs' Contracts Clause violation, there is no genuine material fact in dispute requiring resolution; rather, as a matter of law, Defendants are entitled to summary judgment on this cause of action.

       (e)    Police Power

Plaintiffs allege that the Village Code is "beyond the power of a state to legislate as an attempted regulation of the internal affairs of private business, unwarranted by the exercise of any proper police power of a state under Amendments V and XIV . . . ." (Pls.' Compl., ¶ 19(E).) "There is a heavy burden of proof imposed upon the party challenging a public safety law

because such legislation is entitled to a strong presumption of constitutionality." *N.Y. City Friends of Ferrets v. City of N.Y.*, 876 F. Supp. 529, 534 (S.D.N.Y. 1995) (citing *McGowan v. Maryland*, 366 U.S. 420 (1961)). Indeed, in order to succeed on a police power constitutionality challenge, such as that raised by Plaintiffs, a plaintiff must show that no reasonable basis exists at all for the challenged provision of an ordinance. *See id.* (quoting *Lighthouse Shores, Inc. v. Town of Islip*, 41 N.Y.2d 7 (1976) (further citation omitted)). And, "[t]he party challenging public safety laws must prove by clear and convincing evidence that the law is unconstitutional." *Id.* (citing *In re Winship*, 397 U.S. 358 (1970)). "Th[is] exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature[,] but to ordinances of municipalities as well." *Id.* (quoting *Lighthouse Shores,* 41 N.Y.2d 7).

Plaintiffs have failed to meet their burden; they have not presented any evidence showing that no reasonable basis exists for Chapter 86 of the Village's Code. Instead, the evidence in the record is undisputed that the requirements of Chapter 86 of the Code have a rational connection with the promotion and protection of public safety. *See, e.g., Kelley v. Johnson*, 425 U.S. 238, 247 (1976). Thus, as a matter of law, Defendants are entitled to summary judgment on Plaintiffs' Police Power Constitutional violation cause of action.

       (f)    Vagueness

           (i)  Plaintiffs' Vagueness Challenge Calls for an As-Applied,
               Rather Than a Facial, Evaluation

Plaintiffs also assert that Chapter 86 of the Code is invalid because it is "unduly vague and uncertain" (Pls.' Compl., ¶ 19(F)) and, therefore, violates the Fourteenth Amendment. In their Complaint, Plaintiffs contend that the Code:

both *on its face* and *as construed and applied* by defendants . . .

> interfere[s] and suppress[es] the operation of plaintiffs' private
> business[,] abridges the exercise by plaintiff [sic] and the public of
> the freedoms of assembly, speech, and the right to live and work
> and earn a livelihood in any lawful calling or to pursue any lawful
> trade or avocation . . .

(*Id.*, ¶ 18 (emphasis added).)  In their opening brief, Defendants argue that Plaintiffs' vagueness claim is "to be evaluated with respect to their own conduct and not with respect to hypothetical situations or with respect to the conduct of other parties."  (Defs.' Summ. J. Mem. at 9 (citing *Perez v. Hoblock*, 368 F.3d 166, 175 (2d Cir. 2004).)  In other words, Defendants frame their argument against Plaintiffs' vagueness claim as if it is an as-applied vagueness claim.

In response, Plaintiffs opine:

> This is not an ordinance that "simply regulates business behavior and
> contains a scienter requirement."  *Hoffman Estates v. Flipside, Hoffman
> Estates, Inc.*, 455 U.S. 489, 199 (1982).  It is a criminal law that contains
> no *mens rea* requirement, *Colautti v. Franklin,* 439 U.S. 379, 395 (1979),
> and infringes on constitutionally protected rights.  *Id.*, [sic] at 391.

(Pls.' Opp'n Mem. at 9.)  Apparently based on that notion, Plaintiffs maintain that "it is clear that the vagueness of this enactment makes a facial challenge appropriate."  (*Id.*)

Plaintiffs do not elaborate on their position that the subject ordinance should be reviewed as criminal in nature.  Seemingly, however, it is tethered to the general penalty section of the Village Code, to wit § 1-16,[6] which provides:

> whenever in this Code or in any local law of the village any act is
> prohibited or is made or declared to be unlawful or an offense or
> whenever in such Code or local law the doing of any act is
> required or the failure to do any act is declared to be unlawful,
> *when no specific penalty is provided therefore*, the person, firm or
> corporation who or which violates the same shall be guilty of a
> violation and so be subject to punishment [including a fine and/or

---

[6] (*See* Answering Affidavit, ¶¶ 12, 13.)

imprisonment not exceeding 15 days or both].

Village Code, Chapter 1, § 1-16 (emphasis added).  Not surprisingly, since Plaintiffs have not

endeavored to explain the nature of their argument, no authority is provided for the position

implicitly urged, i.e., since some violations of the multi-subject Village Code would constitute

violations subject to periods of incarceration, all provisions of the Code should be deemed

criminal for the purpose of permitting a void-for-vagueness facial challenge.  If the Court has

correctly identified the Plaintiffs' position, it is rejected as being without foundation in law or

logic.  Otherwise, for example, a person charged criminally with larceny could  plausibly seek a

dismissal of the accusatory instrument on the ground that the assault statute within the same

penal law is constitutionally suspect.  To have standing to mount a constitutional challenge, even

if facial in character, the movant must have some stake in the targeted provision.  One who

stands accused under a different and distinct section of a statute or, as in the instant case, of a

municipal code, does not meet that threshold standard.

　　　　The portion of the Village Code that is particularly applicable here is § 86-11(E), which

indicates that anyone who operates a licensed business activity subject to the Code "in such a

manner as to constitute a breach of peace or to endanger the health, safety or general welfare of

the public" is subject to a suspension or revocation of that license.[7]  *Id.* § 86-11(E).  Which is to

say, Plaintiffs were not charged with the type of conduct that could trigger a period of

---

[7]  Section 86-12 is also germane in that it describes certain procedural aspects of a
suspension or revocation proceeding for a charged violation of § 86-11.

incarceration under the general penalty provisions of § 1-16.[8]  Indeed, § 86-11 is entitled

"Grounds for suspension and revocation," i.e., it has a self-contained "specific penalty"

provision thus rendering the possibility of incarceration inapplicable.  *Id.* § 1-16.

In sum, Plaintiffs' loss of license was based on § 86-11 of the Village Code.  That section

is not penal in nature; rather, it constitutes civil legislation designed to regulate economic

activities.  As a result, Plaintiffs' first asserted basis for mounting a facial challenge against

"Section 86-1 thru 86-13, Article I (Licensing) of the Hempstead Village Code" (Pls.' Compl.,

WHEREFORE clause, ¶ (C)(I), is unavailing.

The second basis urged for a facial challenge is similarly flawed.  Notwithstanding

Plaintiffs' protestations to the contrary, § 86-11 does not give rise to First Amendment concerns.

(*See*, *infra*, Part II (B)(1)(h) ( "Free Speech and Assembly").)   As a result, Plaintiffs' call for a

facial review on this alternate ground is also misplaced.  *See United States v. Mazurie*, 419 U.S.

544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not

invoke First Amendment freedoms must be examined in the light of the facts of the case at

hand."); s*ee also Hersch v. United States*, 685 F. Supp. 325, 327 (E.D.N.Y. 1988)(citations

deleted) ("The stricter facial invalidity test will only be used when the statute affects first

amendment rights, or where a penal statute 'impacts upon important constitutional rights.'"))

Therefore, this Court's analysis of Plaintiffs' vagueness challenge will not be facial but instead

will be as applied, i.e., based on the facts at hand.

---

[8]  Parenthetically, unlike § 86-11, § 86-1 declares that conducting an *unlicensed* business within the Village is "unlawful," thus implicating the fine and incarceration provisions of § 1-16.

(ii)  Plaintiffs' As-Applied Vagueness Challenge to § 86-11 Lacks Merit[9]

In any event, whether a vagueness challenge is facial or as-applied, as the Second Circuit

instructs, "*all* vagueness challenges . . . require us to answer two separate questions: whether the

statute gives adequate notice, and whether it creates a threat of arbitrary enforcement."  *Farrell*

*v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) (emphasis added).  This is consistent with the

Circuit's earlier statement: "The Due Process Clause requires 'that laws be crafted with

sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know

what is prohibited' and to 'provide explicit standards for those who apply then.'"  *Perez*, 368

F.3d at 174 (quoting *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 286 (2d Cir. 1997),

*cert. denied*, 524 U.S. 951 (1998)).  These requirements prevent "trap[ping] the innocent by not

providing fair warning" and prevent "impermissibly delegat[ing] basic policy matters to

policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant

dangers of arbitrary and discriminatory applications."  *Grayned v. City of Rockford*, 408 U.S.

104, 108-09 (1972) (quoted in *Hoffman Estates*, 455 U.S. at 498).

(A)    *Adequate Notice*

The record before the Court states Plaintiffs had adequate advance notice that the alleged

events of August 22, 2003, and like incidents said to have occurred prior thereto could result in

the suspension, and, ultimately, the revocation of their Village license to do business.

Granted, the terms "breach of the peace" and conducting a business activity in such a

_____

[9]  The discussion in the text on vagueness focuses on § 86-11.  That section, given the Court's rejection of Plaintiffs' argument that the relevant portions of the Code are criminal in character, seems to represent — although their stated position is not a model of clarity — the surviving core of their vagueness claim.  (*See* Pls.' Opp'n Mem. at 8-10.)

manner "as to . . . endanger the health safety or general welfare of the public" are broad-based and do not detail each specific prohibited act.  However, as the Second Circuit has explained "a statute or regulation is not required to specify every prohibited act."  *Perez*, 368 F.3d at 175 (citing *Rock of Ages Corp. v. Sec'y of Labor*, 170 F.3d 148, 156 (2d Cir. 1999) ("[R]egulations need not achieve 'meticulous specificity' and may instead embody 'flexibility and reasonable breadth.'") (further citation omitted)).  Indeed, § 86-11 passes constitutional muster vis-a-vis notice if  "it gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited."  *Id.* at 174 (internal quotation marks and citations deleted).  And, in making that determination in an as-applied context, the business environment in which Plaintiffs operate may be considered.  *See, e.g.*, *id.* at 175-76  ("In evaluating Perez's vagueness claim, we must consider the context in which the regulation was enforced, i.e., we must evaluate Perez's underlying conduct by reference to the norms of the racing community."); *see also* the cases cited in *Perez* for the foregoing proposition, including *Rock of Ages Corp.,* 170 F.3d at 156 ("[R]egulations satisfy due process as long as a reasonably prudent person, familiar with conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require."); *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1137 (3rd Cir. 1992)(rejecting professor's as-applied vagueness challenge to regulation requiring professors engage in "sound scholarship and competent teaching" because a reasonable person in the professor's position would know his conduct violated mores of the academic community), *Cranston v. City of Richmond*, 40 Cal. 3d 755, 710 P.2d 845, 851 (1985) (in rejecting police officer's vagueness challenge to a "conduct unbecoming" statute, the Supreme Court of California noted: "[w]hile the language of the statute fails to provide an

objective standard by which conduct can be judged, the required specificity may nonetheless be provided by the common knowledge and understanding of members of the particular vocation or profession to which the standard applies.").

It also warrants mention that it is incontestable that (1) acts of violence were common at the Jamroc and the adjacent parking lot (*see* Ex. C, attached to Defs.' Exs. in Supp. of Mot. Summ. J., and Russo Aff., ¶ 2), and (2) that "on at least two occasions" prior to the incident of August 22, 2003, Lyn met with then Mayor Garner and Police Chief Russo about problems associated with the operation of Jamroc, coupled with conversations concerning possible corrective measures. (Russo Aff., ¶ 3) (*see also*, *infra*, Part II (B)(1)(f)(ii)(B) ("Threats of Arbitrary Enforcement") (discussing incidents prior to August 22, 2003, as well as on that date).) Therefore, to the extent Plaintiffs suggest that the language of § 86-11(E) is not sufficiently detailed to provide advance notice of the type of conduct that could lead to a suspension and or revocation of their license, that claim is belied when viewed in the appropriate business context, *including* prior discussions had with Village officials about problems at the Jamroc site.

In sum, Plaintiffs' claim that § 86-11(E) failed to provide them with adequate prior notice is insufficient as a matter of law.

(B) *Threats of Arbitrary Enforcement*

The second question implicated by Plaintiffs' as-applied vagueness challenge is whether § 86-11(E) contains sufficient guidance to those charged with enforcing its provisions to prevent arbitrary application. *See Farrell v. Burke*, 449 F.3d 470, 492-93 (2d Cir. 2006). Plaintiffs' discussion of the subject in their Memorandum of Law in Opposition consists of the following: "The broad sweep of the ordinance also violates 'the requirement that a legislature establish

minimal guidelines to govern law enforcement.'"  (Pls.' Opp'n Mem. at 9 (citing *Kolender v.*

*Lawson*, 461 U.S. 352, 259 (1983)) .)  But, even if, *arguendo*, § 86-11(E) provides insufficient

general guidance, Plaintiffs' as-applied vagueness challenge is not necessarily on sound ground.

*See Farrell*, 449 F.3d at 493; *see also Thibodeau v. Portuondo*, 486 F.3d 61, 67-70 (2d Cir.

2007).  As explained in *Farrell,* "even in the absence of such standards, [a party will not be

heard to complain if] the conduct at issue falls within the core of the statute's prohibition, so that

the enforcement before the court was not the result of the unfettered latitude that law

enforcement officers and fact finders might have in other, hypothetical applications of the

statute."  *Id.* at 494.

  The events which caused the revocation of Plaintiffs' license fall squarely within the core

of the legislative purpose underlying § 86-11(E).  Those events included numerous danger-

fraught breaches of the peace at the Jamroc prior to August 22, 2003.  (*See, e.g.*, Tr. of Oct. 7,

2003, Village Board of Trustee Hearing at 3 (unnumbered), attached as Ex. B to Defs.' Exs. in

Supp. Mot. Summ. J. ( providing testimony of police receiving report in December 2002 of

possible gunshot victim; when arrived, initially denied access to the Club; upon belated entry,

police "found patrons had left and employees were cleaning up blood"); *id.* at 6-7 (Village Police

Lt. McNamara detailing number of Jamroc patrons shot or stabbed in the Club or the adjacent

parking lot for the period from April 2002 through and including incident of August 22, 2003);

*see also* Exs. B-L and B-M attached to Defs.' Exs. in Supp. Mot. Summ. J. (supporting

documents attached to Police Referral Forms to the New York State Liquor Authority).)  And,

according to a Village police officer at the scene, the events of August 22, 2003  "about 500

patrons from the ages of 17-25 exiting from Jam Rock," and thereupon engaging in protracted

mayhem in the adjacent parking lot.  (*See* Aug. 22, 2003 Report of P.O. Paul Bell, included as part of Ex. D attached to Defs.' Exs. in Supp. Mot. Summ. J.)

In sum, "the conduct at issue falls so squarely in the core of what is prohibited by [§ 86-11(E)] that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer [nor a Village Board] could doubt the law's application in the circumstances." *Farrell*, 449 F.3d at 494.  Simply put, Plaintiffs' as-applied challenge to § 86-11(E) falls short of the mark on the arbitrary enforcement prong of the constitutional analysis, as well as on the first prong concerning adequate notice.[10]

For the reasons indicated, Plaintiffs' constitutional vagueness challenge is found to be without merit.

> (iii) Additional Comments and Conclusions Regarding
>     Plaintiffs' Constitutional Vagueness Claim

Plaintiffs have not claimed that they were constitutionally entitled to a pre-suspension hearing.  However, they seemingly find fault with the fact that  Kearney signed the August 22, 2003 Notice of Suspension (rather than the Village Clerk), and allege that they were not afforded

---

[10]  In rejecting Plaintiffs' as-applied challenge as a matter of law, the Court considered that some of the facts underlying the Village Board's revocation decision were then, and now remain in dispute.  However, those disputes do not affect the validity or, in this case, lack thereof of Plaintiffs' constitutional claim.

Plaintiffs have contended throughout that in many instances, including on August 22, 2003, the events in issue occurred outside the Jamroc — to wit, in the adjacent municipal parking lot — and *may* have involved non-Jamroc patrons, or patrons victimized by non-patrons. To the extent that hypothesis dovetails with reality, certainly a formidable argument could be made that Plaintiffs may not be legitimately saddled with the off-premises acts of others over which they had no obligation, nor, seemingly, ability to exert control.  However, Plaintiffs have not suggested that the mere fact that the Village Board rejected their arguments at the revocation hearing somehow renders § 86-11(E) void for vagueness as applied, and surely such is not the case.

"the opportunity of a fair and impartial hearing." (Pls.' Rule 56.1 Response, ¶ 75.)

It may well be that Kearney lacked the authority to issue the initial Notice of Suspension. However, that communique was followed three days later by a procedurally unchallenged Notice to the same effect issued by the Village Clerk. Plaintiffs have not argued, no less established, the existence of a material issue of fact consistent with the requirements of Rule 56(e), concerning financial or other harm that may have materialized during that three day period. As a result, even if the Notice from Kearney was unauthorized, it represents a non-actionable error without constitutional significance.

With respect to Plaintiffs' claim that they were not afforded a fair hearing, it is undisputed that a hearing was held on October 7, 2003, at which Plaintiffs were represented by counsel. Although the legitimacy of that hearing is being called into question, Plaintiffs have not proffered *any* details about the purported shortcomings of the process such as being denied the opportunity to call or cross-examine witnesses or to otherwise fully present their position to the Village Board. Nor do they argue that the post-deprivation judicial review process available to them in New York was inadequate. *See, e.g., Giglio v. Dunn*, 732 F.3d 1133 (2d Cir. 1984) (finding that post-deprivation remedies available through N.Y. Civil Practice Law and Rules were adequate to satisfy the requisites of due process).

Finally, as earlier noted, Plaintiffs maintain that the October 7, 2003, hearing before the Village Board failed to afford them not only a "fair" hearing, but also an "impartial" hearing. Here again, the conclusory charge stands without elaboration. Seemingly, however, Plaintiffs are suggesting that it was improper for the Village Board to hear and determine the charged violation of § 86-11(E) of the Village Code. That conclusion is highly questionable and, in the

dearth of concomitant support, is rejected.

In sum, none of the additional due process considerations discussed above alters the Court's earlier conclusion that Defendants are entitled to summary judgment on Plaintiffs' constitutional vagueness claim.

(g)     Overbreadth

Plaintiffs do not raise an overbreadth cause of action in their Complaint, but inartfully raise it in their Opposition to Defendants' Motion for Summary Judgment.  (*See* Pls.' Opp'n Mem. at 8-9, 13-14.)  To the extent Plaintiffs raise this as a discrete argument, separate from its vagueness challenge, the Court will briefly address it.

As the Second Circuit instructs, while an overbreadth challenge is a facial challenge (like a vagueness challenge), "[o]verbreadth and vagueness are different doctrines."  *Farrell*, 449 F.3d at 498.  "The purpose of an overbreadth challenge is to prevent the chilling of constitutionally protected conduct, as prudent citizens will avoid behavior that may fall within the scope of a prohibition, even if they are not entirely sure whether it does."  *Id.* at 499.  Further, "to prevail on an overbreadth challenge, 'the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'"  *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 6155 (1973)).

Plaintiffs argue that they have standing to bring an overbreadth challenge because, by having their business license revoked, they have suffered an injury-in-fact.  (*See* Pls.'s Opp'n Mem. at 13-14.)  The Second Circuit "allow[s] a party to bring an overbreadth challenge where that party 'satisfied the [Article III] requirement of 'injury-in-fact,' and [where] it can be expected satisfactorily to frame the issues in the case.'"  *Farrell*, 449 F.3d at 499 (quoting *Sec'y

*of State, Md. v. Munson*, 467 U.S. 947, 958 (1984)).  Since Plaintiffs' business license was suspended and later revoked by the Village, they have satisfied the injury-in-fact requirement; as a result, it will be assumed that they are well-suited to frame satisfactorily the issues regarding overbreadth.

Yet, Plaintiffs' overbreadth challenge must fail.  "[T]he analysis of the merits of an overbreadth challenge is essentially the same as the analysis . . . in the facial vagueness context." *Farrell*, 449 F.3d at 499.  The Court has already discussed that the regulation in this instance is one concerning public safety; as such, the test required to pass constitutional muster is more lenient than if a First Amendment right was implicated.  (*See supra* Part II(B)(1)(e).)  Under the more tolerant standard applied to public safety regulations, the Code is not constitutionally vague.  Similarly, the Plaintiffs have not shown that the Code's claimed overbreadth is both real and substantial in relation to its plainly legitimate sweep.  Accordingly, to the extent there is one, the Court rejects Plaintiffs' overbreadth cause of action.  In turn, Defendants are entitled to summary judgment as a matter of law on the overbreadth challenge.

    (h)  Free Speech and Assembly

Under sub-paragraph (G) of paragraph 19 of their Complaint, Plaintiffs assert, "The ordinances are unconstitutional as an impairment of the constitutional rights of free speech and assembly under Articles I and XIV of the Amendments of the Constitution of the United States." (Pls.' Compl., ¶ 19(G).)  Defendants argue:

> [P]laintiffs have failed to allege that they were engaged in any expressive conduct or explain how the obviously content neutral Code, which applies to all business operated within the Village, infringes on the right of free speech.  Plaintiffs are apparently arguing that their conduct in running a night club and associating with its patrons is being impaired.

(Defs.' Summ. J. Mem. at 10.)  Relying on the Supreme Court case *City of Dallas v. Stanglin*, 490 U.S. 19 (1989), Defendants posit that Plaintiffs' free speech and assembly claim is barred because there is no generalized right of "social association."  (*Id.* at 10-11 (citing *Stanglin*, 490 U.S. at 25).)

In *Stanglin*, a dance hall owner challenged a city's age-restriction ordinance that limited admission of patrons to certain dance halls to persons between the ages of 14 and 18, arguing the ordinance violated the First Amendment, as well as "substantive due process and equal protection under the United States and Texas Constitutions."  490 U.S. at 22.  While the trial court upheld the ordinance, the state appellate court struck it down, "holding it violated the First Amendment associational rights of minors," *id.,* because the "patrons were engaged in a form of expressive activity that was protected by the First Amendment."  *Id.* at 24.  The Supreme Court disagreed, holding the Constitution does not recognize a generalized right of "social association."  *Id.* at 25.  Noting that while "[i]t is possible to find some kernel of expression in almost every activity a person undertakes . . . such kernel is not sufficient to bring the activity within the protection of the First Amendment."  *Id.*  Simply put: *Stanglin* instructs that coming together to engage in recreational dancing "qualifies neither as a form of 'intimate association' nor as a form of 'expressive association'" protected by the First Amendment.  *Id.*

In their papers in opposition, Plaintiffs, inexplicably fail to address the holding in *Stanglin*.  However, citing *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), they do note that music, as a form of expression and communication, is protected by the First Amendment, and state, through the representation of their counsel in their opposition memorandum, that  "hip hop" and "rap" are played at the Jamroc.  ( Pls.' Opp'n Mem. at 17-18.)  Significantly absent

-28-

from their submissions, though, is a specific argument or authority for the notion that the use of music in a business owner's operation, standing alone, imbues the overall operation with First Amendment protections.  Were that the case, such heightened scrutiny would arguably apply, *ipso facto*, to, *e.g.*, roller skating rinks with musical accompaniment and elevators with Muzak.

Here, as in *Stanglin*, music was a necessary part of Plaintiffs' overall operation.  There is no information before the Court that patrons of Jamroc were meeting for anything other than to engage in recreational or social association.  Without any evidence linking such gatherings to a form of intimate association or to a form of expressive association or communication, there is no First Amendment right to be protected.  Therefore, as a matter of law, Defendants are entitled to summary judgment on Plaintiffs' First Amendment claim.[11]

(i)     Equal Protection

Defendants note that "[P]laintiffs do not include the Equal Protection Clause in their laundry list of Constitutional deficiencies set forth in paragraph 19 of the Complaint," (Defs.' Summ. J. Mem. at 11), but that "paragraph 29 alleges a denial of Equal Protection as constituting a basis for their claim pursuant to 42 U.S.C. § 1983" (*id.*).  The Court also notes that Plaintiffs do allege in paragraph 19 that their constitutional rights of free speech and assembly are impaired under the Fourteenth Amendment, as well as under the First Amendment.  (*See* Pls.' Compl., ¶ 19(G).)  Therefore, the Court will infer that this claim includes one under the Equal Protection

---

[11]  Even if, *arguendo*, the enforcement of § 86-11(E) against Jamroc is deemed to implicate not only the due process clause of the Fourteenth Amendment, but the First Amendment as well, Plaintiffs' void-for-vagueness challenge would still fall short of the mark.  No information, consistent with the requirements of Rule 56(e), has been furnished which would permit an inference that the music played influenced the Village's decision to revoke Jamroc's license.

Clause.

Plaintiffs do not present any factual support for their Equal Protection claim. The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause [thus] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). There is no allegation in Plaintiffs' Complaint of any "similarly-situated" individuals who were treated differently. While Plaintiffs assert that their customers' and patrons' constitutional rights are threatened (*see, e.g.*, Pls.' Compl., ¶ 27), these groups of people are not "similarly situated" to Plaintiffs as the customers and patrons are not required to obtain a business license to frequent the Jamroc. In this instance, those who would be "similarly situated" would be other business owners within the Village as they are also required to obtain a business license; yet, the Complaint is void of such an allegation. Nor is there any indication that Plaintiffs' license was revoked based on the racial or ethic composition of their customers which may be different than that of other licensed businesses in the Village. To the extent Plaintiffs may be pleading a "class of one" Equal Protection claim, they fail to mention it in their Complaint. As such, Plaintiffs have failed to state an Equal Protection claim. Accordingly, Defendants' motion for summary judgment on Plaintiffs' Equal Protection claim is granted.

(j) Just Compensation Clause of Fifth Amendment

Insofar as Plaintiffs argue that the Village Code amounts to a taking, this claim is not ripe for adjudication. *See, e.g., Dougherty v. Town of N. Hempstead Bd. of Zoning*, 282 F.3d 83, 90

(2d Cir. 2002) ("The purpose of the ripeness requirement is to ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution. The ripeness requirement prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur . . . ."). According to Supreme Court precedent, before one can claim a takings violation, he must demonstrate that he has been denied just compensation for that taking. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 n.13 (1985). Here, Defendants state that "[a]s plaintiffs' [sic] acknowledge, there is still a state court [taking] action pending between the parties." (Defs.' Reply at 9 (citing "Lyn Affid. ¶ 23 [presumably the first of the two ¶s 23 in the Lyn Affidavit and]; Exhibit 10").) Reference to the two items cited is less than illuminating. Yet, Plaintiffs do not contest Defendants' assertion and, thus, the Court assumes it is correct. Accordingly, the Defendants' Motion for Summary Judgment as to Plaintiffs' Just Compensation Clause claim is granted, without prejudice, as prematurely filed.

>(k) Allegations in Complaint That Defendants' Actions Violated
>not Only the Constitutional Provisions Already Discussed, but
>Also the Fourth, Eighth, Ninth, and Tenth Amendments

Included within the litany of constitutional provisions claimed by Plaintiffs to have been violated by Defendants are the Fourth, Eighth, Ninth and Tenth Amendments to United States Constitution.[12] (Pls.' Compl., ¶¶ 1, 18, 22, and 28.)

---

[12] Those Amendments read:

Amendment IV

The right of the people to be secure in their persons,

-31-

In seeking judgment as a mater of law under Rule 56 based on the absence of material issues of fact, Defendants maintain that the Complaint is subject to dismissal, *in toto*. The above referenced constitutional amendments are necessarily embraced within that broad-based attack. Yet, while Plaintiffs devotes considerable effort in their opposing papers to addressing some of the constitutional provisions alleged to have been violated, their submissions are silent as to others, including the four now under discussion. Under such circumstances, a waiver argument

---

> houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Amendment VIII

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

Amendment IX

> The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

Amendment X

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

U.S. Const. amends. IV, VII, IX, and X.

certainly could be legitimately advanced.[13]  But beyond that, a juxtapositioning of the text of the

Amendments with the facts at hand demonstrates that whatever unexplained metaphysical

relevance any of those provisions may have — a problematic proposition, at best — is

insufficient to affect the outcome of Defendants' Motion for Summary Judgment.

    2.     *§ 1983 Liability*

    (a)     Regarding the Individual Defendants

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to prevail on a § 1983 claim, a plaintiff must establish (1) that a person

acted under color of state law, and (2) in doing so, deprived plaintiff of a federal right.  *See* §

1983; *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Thomas v. Roach*, 165 F.3d 137, 142

(2d Cir. 1999).  Defendants argue that, since Plaintiffs have not suffered any constitutional

violation, the individual Defendants are not liable to the Plaintiffs under 42 U.S.C. § 1983.  (*See*

Defs.' Summ. J. Mem. at 13.)

---

    [13]  "Issues mentioned in a perfunctory manner, unaccompanied by some effort at
developed argumentation, are deemed waived . . ." *Vieira v. Wal-Mart Stores, Inc*., 2001 WL
394898, *7 (D. Conn. 2001) (citing *Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me.
1990)); *see also Kaltman-Glasel v. Dololey*, 228 F. Supp. 2d 101, 110 n.10 (D. Conn. 2002)
(warning plaintiff that its "cut-and-paste recitation (word for word)" of its complaint in
opposition to defendants' motion for summary judgment "is perilously close to waiver of an
issue"); *cf. Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001)(undeveloped
argumentation, are deemed waived)(internal quotations omitted); *Norton v. Sam's Club*, 145
F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived
and normally will not be addressed on appeal.").

Assuming that the individual Defendants were acting under color of state law, the Court has determined, *supra*, that the Village Code does not violate Plaintiffs' constitutional rights:

- under the Privileges and Immunities Clauses;

- under the Supremacy Clause;

- under the Commerce Clause;

- under the Contracts Clause;

- as beyond the State's Police Power;

- of Free Speech and of Assembly;

- of Equal Protection;

- under the Fourteenth Amendment upon the ground that the challenged Code provisions are void for vagueness; or

- under the Fourth, Eighth, Ninth, and Tenth Amendments.

Therefore, as to these above-listed claims, Defendants are entitled to summary judgment and the Court need not reach the question of qualified immunity.[14] *See Farrell*, 449 F.3d at 499 n.14 (declining to reach the question of qualified immunity because it found no cognizable violation of plaintiff's rights) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).[15] Additionally, since the

---

[14] For the same reason stated in the text regarding qualified immunity as to the above-listed constitutional claims, the Court passes on determining whether legislative immunity would be applicable to some of the individual Defendants.

[15] Courts perform a two-part inquiry to determine whether an official is entitled to qualified immunity. *See Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002). First, a court questions whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). By answering this question first, "a clear standard against which officers can measure the legality of future conduct" is provided. *Id.* (further citations omitted). "If [a court] determine[s] that the officer's conduct did not violate a constitutional right, [it] proceed[s] no further and hold[s] that the officer is entitled to qualified immunity." *Id.*

Takings Clause claim has been dismissed as prematurely filed, the concomitant immunity issue is deferred to another day should Plaintiffs elect to pursue the matter further.

(b)     Regarding the Village

To succeed on a § 1983 claim against the Village, in addition to proving actions taken under color of law that deprived them of their constitutional or statutory rights, Plaintiffs would have to establish that an official policy or custom of the Village caused their constitutional injury. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 542 (D. Conn. 2006). It is not enough for a plaintiff to show that a municipal employee or agent committed a tort, *see Bd. of County Comm'rs of Bryan Count, Okla. v. Brown*, 520 U.S. 397, 405 (1997), because "a municipality may not be found liable based on the vicarious liability theory of respondent superior." *Doe*, 453 F. Supp. 2d at 543 (citing *Monell*, 436 U.S. at 691). Since Defendants are entitled to judgment as a matter of law as to each of constitutional claims upon which the § 1983 claim against the Village is predicated, this claim, too, is dismissed.

## III.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted *in toto*.

**SO ORDERED.**

Dated:    Central Islip, NY

---

(internal quotations and citations omitted); *see also Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006) (same); *Farrell*, 449 F.3d at 499 n.14 (declining to reach the question of qualified immunity because it found no cognizable violation of plaintiff's rights) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).

June 28, 2007

\_\_/s/_____

Denis R. Hurley, U.S.D.J.